(22 Misc. Rep. 152.)

## WENDEL v. WENDEL.

(Supreme Court, Special Term, Kings County. December, 1897.)

1. VOID MARRIAGE—PHYSICAL INCAPACITY.
   Under Code Civ. Proc. § 1743, providing for the annulling of a marriage where one of the parties was physically incapable of entering into the marriage state, a husband may procure a decree for annulment, where the wife's ovaries were removed prior to the marriage.

2. SAME—FRAUD.
   A husband is entitled to a decree annulling a marriage for fraud, where, prior to his marriage, his wife did not inform him of the fact that her ovaries had been removed, and, in reply to his inquiry as to her capacity of becoming a wife, had stated that she was physically healthy, but did not know whether she could bear children.

Action by Joseph Wendel against Louise Wendel. Judgment for plaintiff.

Baldwin F. Strauss (J. W. Ridgway, of counsel), for plaintiff.
Gustave Hurlimann, for defendant.

HIRSCHBERG, J. This action is brought to procure a decree nullifying a marriage. The parties were married in this state in June, 1896, and lived together until the following March, occupying the same room for only a very short period. The complaint charges that the defendant's ovaries were removed by a surgical operation some years before the marriage, and that this fact was unknown to the plaintiff. The defendant's answer admits the operation, and the resultant fact that she cannot conceive, or become a mother. It is not claimed that the husband was informed of the nature of the operation before the marriage, nor is it proved that he had intercourse with his wife after the discovery. The defendant was a witness on the trial, but did not testify that she told her husband of the operation. The plaintiff testified that at the time of the marriage he did not know that his wife's ovaries had been removed; that she did tell him that an operation had been performed, but said that it was the Cæsarean operation, rendered necessary in the delivery of a child by a former marriage; that no bad effects had resulted from the operation; that she was physically and mentally healthy; and that she "did not know certain whether she would be able to bear children or not." He adds that she did not tell him the cause or reason of her doubt. This evidence is undisputed, and the sole questions presented are: First, whether the husband is entitled to the annulment of a marriage contracted without knowledge on his part that his wife was physically incapable of conception as the result of a surgical operation known to her, but concealed from him; and, secondly, whether the consent obtained by such suppression is obtained by fraud.

Section 1743 of the Code of Civil Procedure provides that an action may be maintained to procure a judgment declaring a marriage contract void, and annulling the marriage, among other causes existing at the time of the marriage, where one of the parties was physically incapable of entering into the marriage state. Was the defendant, at the time of the marriage, physically capable of entering into the marriage state, within the meaning of this statute? The answer depends in great measure upon what are recognized by law as the objects and purposes of marriage. If sexual intercourse alone is so recognized, then it must be conceded that the defendant was physically capable. But the creation of a family is also regarded as one of the chief purposes of a matrimonial union, and it is difficult to see how an individual can be physically capable of performing the contract who has lost the organs essential to conception. The question is different from that presented by sterility or barrenness. It is well settled that a marriage will not be annulled for the mere barrenness of the wife. Not only is such a condition, and its continuance, difficult, if not impossible, to prove, but its existence, if established, may not be innate, but only peculiar to an inharmonious combination. In such cases, whether the power to conceive or to impregnate be at issue, the question of the condition and its permanence rests on hypothesis and speculation, and is practically beyond the pale of judicial scrutiny. Impotence in such cases is the sole and settled ground of nullity. But it seems to me that the question is vitally distinct where the barrenness is absolute; is not a constitutional quality, or a functional failure, but a physical incapacity, resulting from congenital malformation or the total loss of the organs of conception by disease or the surgeon's knife. The two purposes of marriage are stated in 1 Bish. Mar. & Div. (6th Ed.) § 322, as follows:

" 'As the first cause and reason of matrimony,' says Ayliffe, 'ought to be the design of having an offspring, so the second ought to be the avoiding of fornication.' And the law recognizes these two as its 'principal ends,' namely, 'a lawful indulgence of the passions to prevent licentiousness, and the procreation of children, according to the evident design of Divine Providence.' "

Other text writers equally recognize the propagation of the family as one of the great objects of marriage, but most of them, so far as I have been able to discover, have fallen into the error of regarding the decision of Deane v. Aveling, 1 Rob. Ecc. 279, as establishing the contrary principle. "It will be observed"—Schouler, Dom. Rel. (5th Ed.) § 19, for example—"that this case establishes a principle which later cases do not undermine, namely, that it is capacity for fulfilling the conditions of copulation, and not of procreation, that our own law regards." The case of Deane v. Aveling does not establish the principle quoted, because what was said by the court on that subject was mere dictum. In that case there was peculiar malformation, which prevented true copulation, and the decree was granted upon that ground alone. There was an entire absence of the uterus, and the court did say, referring to that fact:

"If there be a reasonable probability that the lady can be made capable of vera copula, of the natural sort of coitus, though without the power of conception, I cannot pronounce this marriage void."

Upon the strength of this assertion, viz. that the court would not have annulled the marriage because of the absence of a uterus, and, notwithstanding the marriage was annulled for incapacity, this case seems to have been quite generally adopted as leading authority for the proposition that our law regards copulation, and not procreation, as the legitimate object of matrimony, and as the only consideration involved in actions based on physical incapacity. But the counsel for the defendant has not been able to cite a single case, nor have I found one, where the court refused to annul a marriage, the defendant being without organs of procreation. The reasoning of Dr. Lushington in Deane v. Aveling is not satisfactory, and, the case not being authority on the question at issue here, I hold that, within the meaning of our statute, a person destitute of child-bearing organs is physically incapable of the chief and higher purpose of matrimony, and consequently of entering the marriage state.

It follows, also, that in concealing from the husband the fact and the extent of her misfortune, the defendant procured his consent to marry her by fraud. Her statement that she was physically and mentally healthy was made in reply to his inquiry whether she was physically and mentally capable of being a wife, and good faith required that she should have then disclosed the fact that the surgical operation involved the removal of the ovaries. Had the plaintiff married her with that knowledge, he would, of course, be estopped from action because of her physical condition. But it would be repugnant to justice to enforce a contract entered into by one who is ignorant of the fact that the other has been rendered incapable of fulfilling its conditions, which fact has been concealed by the delinquent party, and could not have been ascertained by independent inquiry. On the grounds stated, the plaintiff is entitled to a decree.

Decree for plaintiff, without costs.